## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

---

RHONDA CRAYTON and
SHEILA REED,

     Plaintiffs,

v.                                                                  Case No. 15-cv-2270

PHARMEDIUM SERVICES, LLC and
KERI KJELLIN, and JOHN TOTH,

                                              **JURY DEMANDED**

     Defendants.

---

## COMPLAINT

---

COME NOW Plaintiffs Rhonda L. Crayton and Sheila D. Reed (collectively, "Plaintiffs") and bring this action against their former employer Defendant PharMEDium Services, LLC, their former manager Keri Kjellin, and John Toth (collectively, "Defendants") for racial discrimination, racial harassment, and retaliation in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

### PARTIES

1.     Plaintiff Rhonda Crayton ("Ms. Crayton") is an African-American female resident of Mississippi and a former Chemist in the EPA Lab for Defendant.

2.     Plaintiff Sheila Reed ("Ms. Reed") is an African-American female resident of Mississippi and a former Chemist in the EPA Lab for Defendant.

3.     Defendant PharMEDium Services, LLC 503B large-scale sterile compounding "outsourcing facility" as defined under the Drug Quality and Security Act (DQSA) with its principal place of business located at 150 North Field Drive, Suite 350, Lake Forest, Illinois

60045. Defendant also operates a facility at 6100 Global Drive, Memphis, Tennessee 38141, where were Plaintiffs were employed.

4.    Defendant Keri Kjellin is white female who is believed to be a resident of Southaven, Mississippi.  Kjellin worked and works at all times relevant to the allegations in this complaint as the Manager of Defendant PharMEDium's Memphis, Tennessee facility.

5.    Defendant John Toth is a white male who is believed to be a resident of Shelby County, Tennessee.  Mr. Toth worked and works at all times relevant to the allegations in this complaint as Director Quality Operations of Defendant PharMEDium's Memphis, Tennessee facility.

## JURISDICTION

6.    The Court has jurisdiction over Plaintiffs' claims brought under 42 U.S.C. § 1981 pursuant to 28 U.S.C. §§ 1331 and 1343(4).  Plaintiffs timely filed charges with the Equal Employment Opportunity Commission.  Plaintiffs have not yet received their Notices of Right to Sue, but will amend to add claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. upon receipt of their Notices of Right to Sue.

## STATEMENT OF FACTS

7.    On or about December 24, 2012, PharMEDium hired Ms. Reed to work as a Chemist in the EPA Lab after a three month trial period.

8.    On or about July 15, 2013, PharMEDium hired Ms. Crayton to work as a Chemist in the EPA Lab after a three month trial period that had begun on March 11, 2013.

9.    Throughout their employment with PharMEDium, Plaintiffs consistently were strong performers.   Prior to Plaintiffs' complaints about racial discrimination, which are

2

discussed subsequently in more detail in this Complaint, Plaintiffs had never received any formal written reprimands, warnings, or negative comments about their performance.

10.     Throughout their employment, Plaintiffs were subjected to racially discriminatory and insensitive remarks from Defendant Kjellin and their coworker Elizabeth Simpson.  For example, after showing Ms. Reed a picture of Martha Euphemia Lofton Hayes, the first African-American female mathematician who earned a Ph.D, Ms. Simpson questioned whether she really looked like a black woman.

11.     Ms. Reed complained to Ms. Kjellin about Ms. Simpson's comment and stated that she thought it was racially discriminatory and inappropriate.

12.     Ms. Kjellin on or around May 20, 2013, stated that all black basketball players were "thugs."  In late June 2013, Ms. Simpson stated that she did not understand why everyone was so upset about news reports that Paula Deen had used the word "nigger" because her father would say the word all the time.  Ms. Kjellin, in response, agreed and stated that when she was younger her family had a black worker that was not allowed to come into their home.

13.     Also in May 2013, Ms. Simpson addressed Ms. Crayton in a derogatory tone in front of other workers when she falsely criticized Ms. Crayton for not arriving at work on time. When Ms. Crayton corrected her, Ms. Simpson responded, "It would be more convenient if you got here earlier."  Ms. Crayton reported Ms. Simpson's treatment of her to Defendant's HR representative, Ms. Erika Robey.  Later that day or the next day, Ms. Kjellin told Ms. Crayton that Ms. Simpson had some "social issues," and that Ms. Crayton should address any future complaints with her instead of human resources.

14.     Throughout the next year, Ms. Reed and Ms. Crayton was subjected to racially discriminatory comments similar to the foregoing on a periodic and continuous basis.

3

15.     In July 2014, Ms. Reed applied for a Quality Supervisor position.  PharMEDium did not select Ms. Reed. Ms. Kjellin had significant input in the decision of whom was hired for the position as did Mr. Toth, Ms. Kjellin's supervisor.  PharMEDium selected a less qualified white candidate.  Defendants' action in not selecting Ms. Reed constitutes racial discrimination.

16.     After she was not chosen, Ms. Reed complained to Erika Robey, PharMEDium's HR representative, that she had been discriminated on account of her race in not being selected for the position and provided other evidence of Ms. Kjellin's discriminatory and retaliatory behavior in support of her complaint.

17.     On or about August 25, 2014, Ms. Kjellin started a conversation regarding the shooting of an unarmed black man in Ferguson by a white police officer in front of Plaintiffs. Ms. Kjellin stated that the young black male deserved to be shot and that the government should not send representatives to his funeral.  Ms. Simpson also witnessed the conversation and smiled throughout Ms. Kjellin's statements.

18.     In late September 2014, Ms. Reed approached Ms. Kjellin regarding her concerns that Ms. Kjellin was showing favoritism towards white workers over African-American workers in lab assignments, responsibilities, discipline, and special projects as well as priority of requests for vacation time.  Ms. Kjellin responded that she could make whatever decisions she wanted for the laboratory.  Ms. Kjellin then raised her voice several times in the conversation in an effort to harass and intimidate Ms. Reed.  After Ms. Kjellin's inappropriate behavior, Ms. Reed spoke to Mr. Toth and reiterated her complaints.  Mr. Toth responded that Ms. Kjellin was "overworked." Defendants took no action to substantively address the issues raised by Ms. Reed.

19.     Because of the history of treatment by Ms. Kjellin and Ms. Kjellin's reaction to Ms. Reed's complaints, on or about October 3, 2014, Ms. Reed filed a formal written grievance

with Erika Robey, PharMEDium's HR representative, in which Ms. Reed detailed incidents of racially discriminatory, harassing, and retaliatory behavior by Ms. Kjellin and Ms. Simpson against Plaintiffs and other African-American employees. These complaints included the selection and favoritism of white workers over African-Americans for assignments of duties and special projects and for promotion. The grievance also contained a recitation Ms. Kjellin's and Ms. Simpson's racially inappropriate comments. Ms. Reed also complained of Ms. Kjellin's favoritism in discipline when she overlooked errors of white workers, like Ms. Simpson, but was hypercritical of the work of minority employees.

20. On or around October 21, 2014, Nancy Brandt, PharMEDium's corporate HR director, spoke with Ms. Crayton and stated she would have feedback on her investigation of the Ms. Reed's grievance by the end of the week. Ms. Brandt also interviewed Ms. Reed around this time. Ironically, Ms. Reed was called into and then led to the meeting with Ms. Brandt by a visibly angry Ms. Kjellin.

21. Partially in response to the formal grievance, Plaintiffs and John Toth met in mid- to late-October 2014. Once again, Plaintiffs were led to this meeting by Ms. Kjellin. Mr. Toth stated that he had asked for an independent outside investigation despite opposition from local management. He also stated that the point people on projects would be rotated to address Ms. Reed's concerns of favoritism and that Ms. Kjellin would roll out a new initiative on career paths based on certain goals that employees would have to meet for advancement. Plaintiffs questioned how Ms. Kjellin could be trusted to implement objective standards when she had failed to do so up to that date. Mr. Toth ignored the question.

22. On October 24, 2014, Plaintiffs spoke to Ms. Brandt on the telephone regarding her investigation. She stated she had interviewed everyone necessary for the investigation. Ms.

Brandt had actually only interviewed Plaintiffs, Ms. Kjellin, and Ms. Simpson. Plaintiffs questioned how she could complete the investigation without interviewing the other named witnesses. Only after being questioned by Plaintiffs about her failure to interview all the releveant individuals did Ms. Brandt interview the witnesses who were previously identified.

23. On or around October 28, 2014, Ms. Crayton met with Mr. Toth and complained that Ms. Kjellin was ignoring her suggestions on a project. Ms. Crayton had raise concerns that the current rudimentary standard operating procedures (SOP) for the chromatography were not sufficient to meet FDA standards. Ms. Kjellin told Ms. Crayton to submit the research and documentation to support her position, which Ms. Craytong promptly did. After the formal grievance was submitted, Ms. Kjellin retaliated against Ms. Craytong by ignoring her suggestions and submitssions in an effort to make it appear that Ms. Crayton was not working. Mr. Toth told Ms. Crayton to table the project until the investigation was complete and that he would contact Ms. Kjellin regarding that decision.

24. On the same day, Ms. Crayton contacted Ms. Brandt to advise her of her complaints about Ms. Kjellin's retaliatory behavior with relation to this project. PharMEDium sent Ms. Sally Barron, an outside attorney, to investigate this complaint.

25. Ms. Kjellin on November 3, 2014, wrote an email to Ms. Crayton criticizing her for not meeting her deadline as to the chromatography SOP project. Ms. Crayton responded that Ms. Kjellin should speak to Mr. Toth as he had tabled that work until further direction was given.

26. Also on November 3, 2014, Ms. Reed emailed Ms. Barron to inform her that Ms. Kjellin and Ms. Simpson had been discussing Ms. Reed's grievance. Ms. Barron also later conducted an interview with Ms. Reed in which Ms. Reed reiterated her complaints of racial discrimination and retaliation against Defendants.

27.     On November 5, 2014, Ms. Reed reported to Will Harding, PharMEDium's plant manager, that a technician, Antonique Farsee, had found threats written in a notebook by Ms. Simpson.

28.     Thereafter, Plaintiffs repeatedly attempted to address the issue of Ms. Simpson's threats with PharMEDium's management officials and Human Resources.   PharMEDium officials directed them to Mr. Toth, who dismissed their concerns in favor of Ms. Simpson, a white employee.

29.     On November 10, 2014, Ms. Reed filed a complaint with the EEOC and alleged racial discrimination and retaliation against PharMEDium.

30.     In late November 2014, Ms. Reed filed a complaint with PharMEDium on behalf of herself, Ms. Crayton, and Antonique Farsee, an African-American coworker, which stated that she believed they were being discriminated against by John Toth on account of their race as Mr. Toth refused to address Ms. Simpson's threats and dismissed their concerns in favor of Ms. Simpson, a white employee.

31.      Also in November, Ms. Crayton's attorney, Kandace Watson, contacted PharMEDium's CEO to complain of Defendants' racially discriminatory, harassing, and retaliatory behaviors against Plaintiffs.

32.     In November and December 2014, Defendant Kjellin and Ms. Simpson engaged in a concerted effort to terminate Plaintiffs.  Ms. Kjellin and Ms. Simpson pulled lab notebooks or had others pull lab notebooks on a daily basis in search of any information they could use to create a basis for Plaintiffs' termination.

33.     On December 19, 2014, a meeting occurred with Ms. Crayton, Will Hardman, Nancy Brandt, Ms. Watson, and Ron Bergman, PharMEDium's counsel, in which Ms. Brandt

offered a purported plan to move forward from the issues raised by Plaintiffs. Ms. Crayton again raised the issue that the plan made no sense considering that Ms. Kjellin would be the one implementing the career progression and she was also the discriminating and retaliatory actor. Ms. Crayton also complained again of Mr. Toth's discriminatory treatment of her in favor of protecting Ms. Kjellin.

34.     Four days later, Defendants suspended Ms. Crayton's employment for alleged violations of company policy by Mr. Toth. Ms. Crayton was suspended despite the fact that Dustin Hall, a white chemist, who signed off on processes that were allegedly erroneous was not disciplined or suspended.

35.     On January 2, 2015, Defendants terminated Ms. Crayton's employment.   Mr. Hall was not terminated.

36.     On January 13, 2015, Defendants terminated Ms. Reed's employment.

## CAUSES OF ACTION

37.     Plaintiffs incorporate the foregoing paragraphs as though specifically set forth herein, and alleges that:

38.     Defendants' actions constitute unlawful racial discrimination and retaliation in violation of 42 U.S.C. § 1981;

39.     As a direct and proximate result of Defendants' unlawful discriminatory and retaliatory conduct toward Plaintiffs, Plaintiffs have lost wages and benefits and have sustained other pecuniary loss.

40.     Plaintiffs, as a result of Defendants' actions, have suffered damage to their professional career and professional reputation, as well as to their personal reputation.

41.     Defendants' discriminatory and retaliatory actions have been demeaning to Plaintiffs and have caused them to suffer pain, humiliation, and embarrassment, as well as emotional distress; and

42.     Defendants' unlawful actions complained of above were intentional, malicious, and taken in reckless disregard to the statutory rights of Plaintiffs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the following relief be granted following a jury verdict in their favor:

1.     Back pay, lost benefits, and other pecuniary losses proximately caused by Defendants' unlawful conduct;

2.     Front pay and the value of future lost benefits since reinstatement is not feasible;

3.     Compensatory damages against Defendants in an amount to be determined by the jury;

4.     Punitive damages against Defendants in an amount to be determined by the jury;

5.     All costs, disbursements, pre-judgment interest, post-judgment interest, expert witness fees and reasonable attorneys' fees allowed under actions brought pursuant to 42 U.S.C. § 1981; and,

6.     Such further relief as is deemed just and proper.

Respectfully submitted,

DONATI LAW, PLLC

s/Bryce W. Ashby
Donald A. Donati #8633
William B. Ryan #20269
Bryce W. Ashby #26179
1545 Union Avenue
Memphis, TN 38104
901/278-1004
bryce@donatilaw.com
Attorneys for Plaintiff